We'll hear argument first this morning in Case No. 17-530, Wisconsin Central v. United States. Mr. Dupree. Mr. Chief Justice, and may it please the Court, the Railroad Retirement Tax Act levies a payroll tax on railroad employees' money remuneration. The question presented in this case is whether remuneration in shares of stock is remuneration in money. We believe it is not, for a simple reason. Stock is not money. The plain meaning of money is a generally accepted medium of exchange, and stock is not that. You can't buy— How about a check? We think a check would constitute a medium of exchange, Justice Kennedy. It essentially transfers currency. There is a legal right to obtain currency on a bank draft. So we do think that a check would constitute money remuneration. So you end the slippery slope about that at that point? Well— What about a bond, U.S. Savings Bond? That would not be, Your Honor. We don't think a bond would constitute money remuneration. Typically, the things that would constitute money remuneration obviously would be cash, paper notes, coins, but it would also encompass more modern ways of transferring currency, such as direct deposit or a check. We think that the plain meaning of money remuneration is also confirmed when this tax provision is viewed in the larger context of the tax code as a whole. And that's true both for the tax code as it existed during the Great Depression when this railroad statute was enacted, and also the code as it exists today. Mr. Dreeben, wasn't it so that when the Act was enacted, compensation was in money, but over time, compensation in the form of stock has become more frequent, and it serves the same purpose? So why can't one read any form of monetary compensation to include any form of compensation readily convertible into cash? Well, Justice Ginsburg, what the historical record shows is that at the time of the railroad statute was enacted, railroad employees were actually compensated through a variety of means, both cash-based and also non-cash-based. Railroads gave their employees everything from in-kind benefits, free transportation, property, and so that same issue that presents itself today, where railroad employees get a variety of different types and forms of remuneration, also existed back in the Great Depression. And what Congress did was it said we recognize that railroad employees get a variety of types of remuneration, including stock, by the way, at that time, and yet it drew the line in statute. How common was stock at that time? How common was it? It was sufficiently common. There was a report cited in our papers in the National Industrial Conference that talked about how, going back to the 19th century, many railroads offered stock purchase plans to their employees. So it certainly was a well-recognized form of remuneration back when this statute was enacted. And I think if this Court were to compare the language that Congress chose to put in the railroad statute compared to what it put in FICA, which was enacted virtually simultaneously in the Great Depression, that underscores our interpretation of money remuneration. FICA sweeps broadly, as this Court has noted. It encompasses all remuneration, including, and this is critical, text, including any remuneration that is not in cash but that can be valued in cash. Kagan in the way you talked about it, it's not just that we have to give meaning to the term money. I think you're quite right to say that the term we have to look at is money remuneration. Is that correct? That's the key term, yes, Your Honor. And so that's really money in a compensation scheme, right? I mean, that's what that means. Money remuneration. That's right. So let's even take your own definition, which I think that there's a lot to be said for. Your definition tends, of money, tends to be the one that's first in the dictionaries. So you said a generally accepted medium of exchange. But now you put that with the word remuneration, in other words, in a compensation scheme. And then the question becomes, is stock a generally accepted medium of exchange in a compensation scheme? And I would think that the answer to that is yes. I mean, we see this all over the place, that companies give stock as well as cash in a compensation scheme, that it is a generally accepted medium of exchange for compensation. Well, I'm not sure it quite works out that way, Justice Kagan. In other words, if a company remunerates its employees through some form, say, for example, free lunches, I don't think it would be right to say, well, therefore, food has now become a medium of exchange. I think a medium of exchange – Well, I think partly it's because, you know, some companies might give free lunches and other companies might not give free lunches. And, I mean, this is a kind – instead of getting a check, you're getting stock. Isn't that right? Well, you're getting a stock option, which then needs to percolate for many years before it turns into a butterfly and becomes stock. You can take it in stock, you can take it in cash. Ninety-three percent of some of these companies' employees just take it in cash, forget about the stock. So why isn't it just, you know, you can get it in cash, you can get it as a stock option, or in stock when that matures. It's a generally accepted medium of exchange. Well, I think a generally accepted medium of exchange refers to something that, number one, has a fixed value. In other words, it's a measure of value. And it's something that any citizen could use to obtain goods or services in an economy. In other words, cash certainly fulfills that function. I can obtain goods and services with cash. If my employer – Well, that's why, I mean, in your briefs, you keep on saying you can't take a stock option to a grocery store. But I think – and that's obviously right. But I think what I'm saying is that would be a relevant question if all we were asking is what's the definition of money. But that's not what we're asking. We're asking what's the definition of money remuneration. So the fact that you can't take a stock option to a grocery store is irrelevant to that question. The question is that when it comes to compensation, is a stock option used interchangeably with money? And I think in this company and many others, it is, isn't it? Well, I don't think so. Certainly in this company, the record shows that fewer than half the options at issue were actually promptly exchanged for cash. So the record in this case shows that these employees, again, the majority of options at issue, were retained as stock. They were not sold for cash. And I think under Your Honor's question, pretty much anything that could be sold for cash would be swept into the definition of money. Anything that an employer gives to an employee can be valued and could be sold. Granted, there are some things that are more liquid than others. Kagan. Well, let me ask another question, Mr. Dupree, just to test this a little bit. So let's say a company has two employees. And one employee makes $200,000 in cash and is granted $5 million in stock-based compensation, $200,000 plus $5 million. And the other employee is just given $250,000 in cash. Now, who makes more money? Well, in Your Honor's – the context of Your Honor's question, I think money is essentially synonymous with overall wealth or assets. And that is a definition of money. Right. So the answer to my question is, of course, the guy who gets the $5 million in stock makes more money. But in the context of that question, I think that's fair. But I think in the context of this tax statute, I don't think it's right to say that when the 1937 Congress put the word money into this tax statute, it meant it in that capacious sense to include the value of everyone's assets or their wealth generally. That wouldn't make sense. Sotomayor Why do we have to go that far? Why go that far? Why don't we just take what the Seventh Circuit said, which is this form of compensation is money. I agree with you a bottle of wine at Christmas is not. I don't think going to a baseball game occasionally would be, because those are not – I don't think of who's richer or not or who's getting paid more or not by those items. But why do we have to go as far as you're going? Well, I think to answer Your Honor's question about the Seventh Circuit's analysis, the Seventh Circuit and Judge Posner actually agreed with our definition of money as a commonly accepted medium of exchange. Where he went awry, in our view, is concluding that in the year 2018, stock has become a medium of exchange. We don't think that's right. He certainly cited no legal or economic authority for that proposition. At this point, I think the point that Judge Posner's main point was that there is no economic difference to the recipient, whether he gets $1,000 in cash in hand or a share of stock that he can easily convert to $1,000. Right. And our response to that, Justice Ginsburg, is that, again, taken to its logical conclusion, it would mean that anything an employee gets is money. If an employee is given a car worth $10,000, in an economic sense, there may be no difference between getting a car that is worth $10,000 and getting $10,000 in cash. But when Congress put the word money in the statute, it did not mean to sweep in anything, as the government says, that can be valued or that can be sold. That goes way too far. But if you're right, then Congress did an idle thing when it specifically excluded from compensation subject to the tax a qualified stock option. If stock options were not money, then there was no need for that. Well, a few points on that, Justice Ginsburg. The first is that the government argues that that exemption is relevant to this case, because in the government's view, it essentially renders our definition or it would render the provision surplusage under our definition of money remuneration. We think that's wrong, and the reason why that's wrong is because when an employee exercises a qualified stock option, they always get stock, but, and this is the critical point, and when the government concedes, they often get cash as well. That is why that E-12 exemption is not surplusage under our reading. It does work. I think it also bears mention that that exemption was enacted in 2004, about 70 years after the original money remuneration statute was enacted, and I think it would be a little peculiar to say that in 2004, Congress intended to change or to tamper with the definition of money remuneration that, by the way, has remained in that statute unaltered for almost 70 years now. Mr. Dupree, if we're going to look back, as you're encouraging us to do, further than 2004, why not look at 1938 and the regulations that were promulgated then that suggest that money remuneration is broader than you're arguing? Well, Justice Gorsuch, I think actually that that original regulation strongly supports our point. What that regulation says, and this is the original IRS regulation interpreting the statute, is it says that the IRS is going to construe money to include money or anything, and this is the critical language, anything that can be used in lieu of money. And then they provide a host of examples, most of which are salary, bonuses, commissions, cash payments. So we think that that original regulation strongly supports our view because it underscores the IRS's original understanding of the medium of exchange requirement. That's what the words used in lieu of. Stock has never been used in lieu of money. What if we read it more broadly? Would you have any further response? Well, if you read it more broadly, I don't think you could read it more broadly to encompass stock. I'm sure you don't, but let's just suppose we did. Then what? Well, then I would say that that regulation was impermissible, a conflict with the statute. What do we do with history? I wasn't talking about the tax regulation. I was talking about the U.S. Railroad Retirement Board, their opinion that says stock options are likely to be remuneration, money remuneration. You have the 1994 regulation by Treasury, and you have your company and many others paying this tax without saying anything until very recently. At what point do we say that history supports one reading as opposed to another? As the government points out, yes, you can't perhaps change meaning with later regulation, but later regulation can be a reflection of what everyone has understood the meaning to be. Right. And, Justice Sotomayor, I think it's fairly clear, and I don't think the government disputes this point, that for the vast majority of this railroad statute's existence, the railroads were not, in fact, paying tax on stock. The government certainly hasn't said we have evidence from the 1950s and 1960s that this was being done. In fact, under the regulation that Justice Gorsuch mentioned, it would not be included. What the government has identified, and Your Honor alluded to this, is that Railroad Retirement Board regulation that actually first was issued by way of a decision in 1938, and we think that's very telling, because what the Railroad Retirement Board says is it says, under the statutory language, we will only treat stock as remuneration if the party, the employer, and the employee agree to do so and that they can value it in advance. None of that happened here. So if the government is right that this Court should look to the Railroad Retirement Board's historic treatment of stock, we think that strongly supports our position. In fact, under a plain, straightforward application of that regulation, we win this case. Ginsburg. Was the government wrong in saying that at least for the last 20 years, railroads have been paying tax, treating the stock option as equivalent to cash? There must have been, if they were paying for 20 years, there must have been something that triggered this inspiration to say this. Kennedy. And if I could add to that question, the employees thought it was taxable as well. Well, I think what happened was And so what effect do we give to this longtime practice? And even your people in the position of your own clients until recently thought that it was taxable. Well, again, I think the history going back to the Great Depression up and through the mid-'90s is as a general matter, the railroads were not paying tax on this. As far as what changed, in 1994, the IRS came out with a new regulation. It's the one that's currently on the books, which is a peculiar regulation, in all honesty, because it basically says we are going to treat FICA wages and RRTA compensation to mean the same thing, except where they differ. But the IRS never, to this day, it never has issued a regulation saying that stock options and stock is taxable under the Railroad Retirement Tax Act. It has never said that. So in 1994, the IRS changed its position. It got rid of its longstanding historic understanding that money remuneration did not include stock, and it issued this new regulation. At that point, there were several years where I think parties, frankly, didn't quite know what the state of the law was. I do think it's right that there were some railroads that paid tax. I suspect that may have been just a judgment that rather than litigate the question, it was easier to pay the tax for a few years. But in our case, the Petitioners in this case, we didn't issue stock until 1996. And that stock, obviously, the options take years to vest. It can be up to a 10-year term in instances. And in this case, we are seeking refunds beginning with the 2006 tax year. So to the extent there was a period in time where railroads were paying tax, does that reflect a historical practice? I think the answer is no. At most, it might have been a handful of years in the overall 75 to 80-year sweep of this railroad tax statute. We think that if this Court construes the railroad statute's language against FICA, that strongly supports our interpretation, because we are asking you to give meaning to the textual difference in the two statutes, which were enacted virtually simultaneously in the Great Depression. Congress deliberately chose very different language in establishing the tax base. And even though the railroad statute and FICA have been amended numerous times in the 80 years since, those words appear unaltered today in the U.S. Code from the moment they appeared when President Roosevelt signed those bills into law. Congress has not changed. Kagan, Mr. Dupree, just to ask you a question not about the text, but about reasons and purposes, what would be your best reason for why there should be a distinction between FICA and the railroad system with respect to stock options? Absolutely, Justice Kagan. The reason why is, going back to history and why Congress made the decision that it did, it often, as this Court knows, legislates specifically for the railroad industry. The railroads, unlike all other industries, had an existing pension system. And so the distinction was written into the law to reflect the historic practice in the railroad industry. When Congress made the decision to federalize these railroad pensions, it said we are going to federalize it, but we will maintain the existing cash-based pension structure. Well, I understand the government to be saying that that did exclude certain kinds of things that were clearly not cash-based. But, you know, lunches or something like that. But that's a different question from the one I'm asking. I'm just saying, look at this thing, stock options, and say, why would Congress want it to be taxable in FICA, but not taxable in the railroad system? Because the railroad system, retirement system, is fundamentally different in key respects from Social Security. It has much higher tax rates. I mean, the railroad combined tax rate is north of 30 percent, whereas FICA is about 14 percent. The railroad retirement system also provides for much more generous benefits to retirees. So they are two fundamentally different retirement systems. Are there similarities?   Yes. In places of the country, it's not. Kagan I guess I'm still waiting for a difference that would match why Congress would make this different treatment of stock options. Well, I think the different treatment of stock options traces back to the original decision that Congress made and that it has maintained now in the statutory text for 70-plus years, the distinction between a broad wage-based tax system in FICA that encompasses pretty much everything the employee gets and the far narrower tax base that the railroad system utilizes. So I think it's just a natural function that when Congress designed the tax bases for these two retirement systems, among many other differences between the two regimes, it formulated the tax base in a much narrower manner. That's why today there are different treatments for certain things, such as the stock options in this case. It's a function. Sotomayor I thought that the railroad pension system in the 1930s was at risk. That was one of the reasons why this scheme was developed. Why would you base a new scheme completely on the old scheme that was underfunded to start with? It seems counterintuitive to me that Congress would want to copy the old system, stock and barrel, when it, as you say, already knew that stock options were a part of remuneration. Right. The reason it could address that concern, Justice Sotomayor, in other words, mirror the existing cash-based pension structure in the new Federal regime, is it could address questions of solvency simply by adjusting benefits and tax rates. In other words, it wanted to preserve the overall structure, but it would adjust benefit levels, it would adjust tax rates, and of course there would be an underlying Federal guarantee. Sotomayor So what's going to happen now? Every railroad is going to not pay, if we buy your argument, not pay taxes, payroll taxes on stock options. Why don't railroads move to giving out more stock options and less cash? And wouldn't that put the system into economic difficulty? It would not, Your Honor, on a number of points. I guess with regard to the last point about putting the system in economic difficulty, the railroad system actually has a statute, a provision, that self-adjusts based on the money coming in and the benefits going out to ensure that the system remains solvent. So the short answer to Your Honor's question is that the statute doesn't The pensioners get less, is what you're saying to me. The self-adjusting system means that pensioners would be safe. No, no, not necessarily. I mean, the rate could go up. In other words, someone pays, no matter what. Someone pays. I'm not quarreling with you there, but my point is that the system has an The person who pays is the Joe Blow who gets minimum wage or something close to it, and the people who receive a lot more in stock options pay less. Well, no, I don't think that's right. In other words, the stock options in this case, first of all, were not confined to a narrow group of senior executives. They were issued to rank-and-file employees as well as senior executives. The other point is that the RRTA has a wage cap, much like Social Security does. So only the first portion of an employee's remuneration is actually subject, for the most part, to this tax. So as a practical matter, it doesn't have a dramatic impact on overall tax revenues. In this case, the amount of tax I don't understand that. If you get less money into the system, how are you going to pay out the same benefit? Oh, and my point is that it may not be the less money going into the system is your that's because if you have an executive who is receiving a large salary in stock options, they already exceed the compensation cap by virtue of their salary alone. So the fact that they are getting stock on top of that makes no difference, because they are already maxing out on the tax. That's the point. I think also, just as a practical matter, I don't think railroads could move to a pure stock-based compensation system for a number of reasons. One is you have collective bargaining agreements in place. But more broadly than that, the stock would have to come from somewhere. If a corporation said, we are now going to start printing more shares in order to compensate our employees in stock, that would massively dilute the value of the share. And there's no way shareholders would ever tolerate something like that. I think as a practical matter Can you tell me, just as an empirical matter, in this case, are these stocks always listed so that there's a list price that everyone knows? Yes. These are publicly traded stocks. That's right. Could there be instances where there might be small satellite corporations that are not listed, so the – because you always know the value if it's publicly traded. That's right, Justice Kennedy. And actually, it's a great question, because the BNSF Railroad, one of the nation's largest employers, stock is no longer publicly traded. So you could have a situation where a railroad that is not publicly traded issues a stock, and then you would have extremely thorny valuation problems, because it's one thing to say, well, we can calculate the value of the stock based on market price, but if it's not publicly traded, as any accounting textbook will tell you, it can be a very difficult endeavor. Is it ever backdated? If I get a bonus or the employee gets a bonus for today, April 16, is it ever backdated so that you can buy it as of April 16, 2017? I'm not aware of that, Your Honor. The way that the options in this case worked is that the exercise price is determined at the moment the option is issued. So if in year zero the stock is trading at $100, that's the so-called strike price that you can purchase the stock for 5, 6, 7, 8 years down the road. And I think, frankly, that also — But is the strike price always equivalent to the price on the day that the option is issued? Yes. Yes. The day the option is issued, that's when they set the strike price. And I think, just to conclude my answer to one of Justice Kagan's earlier questions, I think that's yet another respect in which stock is fundamentally different from money. It's an investment property. The value fluctuates. When these options were issued, no one had any idea what they would be worth. Maybe they would be worth nothing 5, 10 years down the road when the option has vested and it's exercised. Stocks are investment property with fluctuating value, stands in sharp contradistinction to cash, which has a fixed value. So for those reasons, we ask the Court to reverse the judgment below. I'll reserve my time. Thank you, counsel. Ms. Kovner. Mr. Chief Justice, and may it please the Court. Three parts of the statute demonstrate that the phrase, any form of money remuneration, refers to those payments that can be readily valued in or converted to cash. The first is the statute's text. The RRTA contains exclusions for particular kinds of stock options and for in-kind benefits that only make sense if the statute's money remuneration language is given a broad scope. Second are the contemporaneous interpretations of the statutes. Both predecessor legislation and the agency's early regulations construed any form of money remuneration broadly to reach non-cash benefits like the stocks here. And the third is the statute's objective of providing a financially stable, self-supporting retirement system for railroad workers. That objective would be undermined if employers could avoid taxes by paying employees in stock, a highly liquid asset that serves as the functional equivalent of cash for employees. Ginsburg. How does it work? When does the railroad worker get the remuneration? When he gets the stock option or only when he cashes it? It's only when he exercises it. And I think it's a really important point that goes to what Mr. Dupree was just discussing, which is that stock options are only treated as compensation at the moment when they have a readily discernible cash value. So not at the moment that they're issued, but only at the moment that the employee exercises them. And at that moment, they have a 100 percent certain cash value. And you can see that by looking at the record in this case. An employee at the company in this case, when they exercise the stock option, there's a one-page form, which is Exhibit 78 in the record below. If they simply want cash instead of stock, they just check a box on the form and say, please deposit the cash value of this option to my bank account. So these options are only valued at the moment when they have a readily discernible cash equivalent. If I can just go to a few of the issues that Mr. Dupree discussed. I mean, the first is the qualified stock option exemption. And this exemption was added to the statute by Congress, and it exempts one particular type of stock option. So it is obviously signaling that Congress was understanding that other kinds of stock options were going to be subject to taxation under the RRTA. Kagan in what circumstances do you think we are allowed to look at what is clearly the natural import of that exemption? In other words, that exemption came about later. So do we have to find that money remuneration is an ambiguous phrase in order to look at it, or do we take the statute as a whole just generally? I think, you know, what this Court has said about this in West Virginia University Hospitals v. Casey is that the Court adopts the permissible meaning that fits most logically and comfortably with both the previously enacted and the subsequently enacted provisions. So here we think the only meaning that fits with both, I mean, Mr. Dupree acknowledged when he stood up that money can have this broader reading that readily encompasses stock, and that's the only meaning that fits with the qualified stock option exemption. It's also the only meaning that fits with many other exemptions that Congress added for things that just aren't cash, like for lodging, like for health care benefits, like for employee achievement awards in tangible property. These exceptions only make sense if the statute extends beyond cash. Sotomayor, may I ask, was Mr. Dupree right about the history that it wasn't from 1938 to 1994, railroads were not paying on cash on options? They were not paying payroll taxes on cash? I haven't seen any authority on one side or the other regarding very early in the statute's history. I think we do know, and you can see, you know, page 7 of our brief is where we discuss cases that recount this history. We do know that some employees have been paying taxes on stop options for quite some time. So Union Pacific is one example. They start issuing options in 1981, and they pay taxes until 2007 when they file suits. So 2011 is the first time that we see a suit challenging whether stock options are taxable under the RRTA, and Union Pacific and other railroads have been filing. Sotomayor, what do I do with the fact that where I'm having difficulty making the leap in your argument is Congress did use money remuneration in one statute and wages defined very broadly in another. That was in 1938. Generally, when you have two different descriptions of words, you have to give them two different meanings of some sort. So what do I do with that? You're now equating money remuneration with wages, as it appears in FICA, but there weren't identical words used. Sure. And we agree that money has to be given some meaning, and we think that Congress was doing something deliberate when it used money in the RRTA, but didn't include parallel language in FICA. And at the time that the RRTA was enacted, railroad workers, and it's discussed in the history and the hearings leading up to the enactment of the RRTA, they received a variety of benefits that were sort of hard to value, couldn't readily be assigned to monetary value, and these included things like the right to have certain safety gear on the job and an unlimited, but non-transferable sort of lifetime use of the rail's travel benefits. So these are things that would have been hard to value, and we think the use of money carves those out of the RRTA, whereas they weren't carved out. Roberts, you would agree, wouldn't you, that not every form of stock qualifies under your definition? Just as Kennedy mentioned, non-publicly traded stock, I suppose there are some entities in which their stock is particularly volatile, and you'd expect it to change between the time you get the options or the actual stock and when you liquidate it. How are we supposed to tell which stock counts and which doesn't? Sure. So this is an easy case, and the Court obviously needs to not go further than publicly traded stock. But as with respect to privately traded stock, we think that's covered, too, and here's why. So it's true that it's publicly traded. Roberts, when you say covered, too, you mean that counts as money remuneration. That's right. And it counts as money remuneration only at the time that you exercise the option. So it might be that that stock is more volatile than a publicly traded stock, but it has a certain value on the date you exercise the option, and that's the only value that you look to. Somebody is going to have to value that privately traded asset for the purpose of income tax. They are going to have to declare income that's equal to the value of that stock. And so we think once they are valuing it for income, it also has a readily discernible market value for the purpose of the option. Why would you wait until the day of exercise, though? If it why not the date of vesting? And what the – I'm still not clear on what you do with privately held stock that is not readily – there's no liquid market value that you can look to at any point in time. Sure. So with respect to the first point, we think that options like those that are issued in this case only have a readily ascertainable market value at the time that they are exercised, and that's because there tend to be limitations on the options like – Almost anything can be valued, though. I mean, anything can be reduced to money. So why wait, other than it's convenient for the government? No, we think it's a matter of whether it has a readily ascertainable market value. And there's a pretty big body of law on the issue of when options satisfy that. It starts with this Court's decision in Commissioner v. LaBeau, and it's also the value of options under the Income Tax Code. And that sort of body of law says for the kinds of options that are issued here in the employment context, there are just too many conditions and contingencies on whether you're going to be able to exercise the option at all and what its value will be at the time of exercise. To assign it a raise … No, no. Once it vests, it's different. There's no question that you will be able to exercise it. It's just when – you may choose to exercise it years later, but it vests, so you immediately at that point in time have the right to exercise it. So I'm not sure what your answer to the Chief Justice would be on that day. I'm still not clear what your answer to the Chief Justice would be. As to a publicly traded stock? Sure. I think our view, you know, so there's a sort of pre-established body of IRS law about this, and it looks to, first, the point of issuance, and second, the point of – the point at which you exercise the option. And I think the IRS has sort of made the determination, applying this Court's decision in Commissioner v. Levieux, that those are the two points that you look to. And the IRS has generally said at the point that the option is issued … So more regulations. Okay, fine. What do we do about the more general problem, though, that lots of companies issue lots of things to their employees that are forms of compensation that can be reduced readily to money? You mentioned lifetime passes for riding the rails, for example. Sports tickets might be another. Home technology might be another. Why aren't all those kinds of benefits child care? Why don't all those qualify as money remuneration of the government's view, or do they? So I think there are – our definition of money remuneration basically has two pieces. First, it can't be readily valued into cash, and second, it can't be readily converted into cash. We think that either suffices, but at a minimum, we think the second, which is what you have here and not in those other cases, suffices. So if it's something that you can easily convert into cash, here, just by sort of checking a box on the form when you exercise the option, we think at a minimum those kinds of things qualify as money remuneration, which is sort of what the court of appeals said. What about bushels of wheat? It's readily convertible into cash on the Chicago Commodities Exchange. So if somebody gave you 20 bushels of wheat, you would count that as money remuneration? Well, I don't think that's readily convertible to cash for the person who receives it. It's true that there are certain circumstances in which a person could buy or sell a bushel of wheat, but the employee who receives a bushel of wheat in their compensation, if that were to occur, can't readily convert it into cash in the same way that they can convert an option. I mean, I suppose here it's a little bit of both. Well, okay, they give you a little – they say, okay, here, you're entitled to buy 20 bushels of wheat on the Commodity Exchange. Does that count as money remuneration? Well, a voucher for bushels of wheat? I'm not sure. Sure. Right. I think the problem is that that voucher for bushels of wheat is not going to be something that you – that the employee can readily convert into cash. If you do get to the point where we're talking about vouchers that do have a readily ascertainable market value, I think it's a pretty helpful example to us, because if you look to the 1938 regulation that Justice Gorsuch was alluding to, it gives a pretty expansive definition of money remuneration, and it indicates that it includes things like merchandise orders, which I think is perhaps somewhat equivalent to the bushels of wheat voucher. It's something that you could exchange for a commodity at the company store. I mean, that kind of thing is less liquid than stock, which anybody can convert to cash and which is used as a means of exchange in a variety of circumstances. It's a predominant medium of exchange now in many corporate contexts and employee compensation matters. Ms. Kovner, would your answer to the Chief Justice's question be different if a company said you can take a bushel of wheat or its equivalent in cash value? Yes, Your Honor. I mean, I think there it's – and that's, I think, more analogous to here, where essentially the employee can check a box on a form and they're just receiving it in cash. It's essentially instantaneous conversion into cash. I mean, and I think going to the purpose of the statute and what I think, you know, this Court has indicated in United States v. Silk is how these statutes should be construed. I mean, this is a statute that's intended to provide a self-sustaining system of retirement benefits for railroad workers. And if an employer can do that. And Dupree told us that there isn't any real jeopardy to the system if these stock options were not subject to the – to the tax. So I don't think, with respect, I don't think that the points that Mr. Dupree was making are exactly correct, and if I could explain why. Mr. Dupree's first response was that the tax rates self-adjust under the RRTA. That's true for the second tier of the RRTA, the sort of supplemental pension benefit system. It's not true for tier 1, which is the fundamental equivalent of Social Security. For tier 1, you've got the same tax rate as FICA, and you're guaranteed the same benefits level as FICA. So I think it's very strange to imagine that Congress would have thought you could have the same tax rate and the same benefits, but a much smaller tax base. And I think the other thing that Mr. Dupree said as to why it's not going to undermine the RRTA system is that high-level employees are going to max out on their compensation. So it's not really going to matter how their options or how stock-based compensation is treated. And I don't think that's exactly right for two reasons. The first is only part of the RRTA tax maxes out. The part that funds Medicaid does not max out. And the second is that there's nothing to stop an employer from converting all of their railroad's compensation of a high-level executive to cash. I mean, it's not uncommon for a CEO to get $1 in cash and the rest of their payment in stock. Kennedy, it's a third possibility that the employee waits until after he or she retires and doesn't receive the big salary and then exercises the option? Or is that unrealistic? You know, it's possible that there are some options that don't get taxed for that reason, but obviously if the Court were to say that any payment that a company makes to its employees over the duration of their career that takes the form of stock is not taxable, that's posing a threat to the railroad retirement system. You know, I think if the Court has doubts about how the term any form of money remuneration is construed, ambiguity in the word money, I think the surrounding language is helpful. There's any form of suggests that the Congress was intending a broader meaning of the term money, and then the exceptions that Congress added to the statute are really incompatible with the Tishner definition. And then the contemporaneous interpretations of the statute by both the RRB and the Treasury Department are both broad, and Congress amends the statute repeatedly against the backdrop of those interpretations. So whatever doubt one has about, you know, whether those interpretations were too broad to begin with, once Congress repeatedly amends the statute and doesn't change that base definition of compensation. I guess I'm not sure how the regulations help you. I mean, the more recent regulation says effectively that money is whatever money is under the statutes, that doesn't do much work, it seems to me. And the fact that the IRS chose to replace the 1938 regulation that might or might not be more helpful to the government, we can debate that, seems to me a lost opportunity for the government, no? I mean, I think that if the regulation had provided a lot greater clarity and discussed stock in particular, obviously, that would have been helpful. We think the regulations are still helpful in two ways. How is the existing regulation helpful to the government? Sure. So the existing regulation talks about specific limitations in the statute as being the way in which the RRTA and FICA differ today. And we think the only reasonable way to read specific limitations is that it's talking about the enumerated exceptions, which are different under the statute. If you look at the preamble, I mean, that's what the agency explains that it's doing. It's saying that now that all these exceptions have come into the statute, which deal with the kinds of hard-to-value benefits that were being addressed by money in the first instance, the statutes really have parallel meaning. And I think the agency also points out that the statutes now function in parallel in that they guarantee the same level of benefits under Tier 1 and have the same tax rate under Tier 1. So it makes sense to construe those things. Sotomayor, I don't know. That doesn't help me, because if you're equating, as the current regulations do, the railroad money remuneration with FICA's wages, what do we do? FICA requires you to value a hard-to-value stock option. You're telling me it's not required under money remuneration. So I'm not quite sure how you can equate it when you yourself have recognized the major difference.  Under FICA, as they are, under the RRTA. Sotomayor, that's easy because it's publicly traded, it's the known value. But the way the regulation is reading, it seems to be equating money remuneration completely with wages, but you're suggesting you're not. And we think money does some work, but we think the work that money remuneration is doing in FICA, in the RRTA, is now basically covered by enumerated exemptions under FICA. So basically Congress comes in and they add exceptions for things like de minimis benefits and fringe benefits, the kinds of things that were generally falling in that money bucket. Under the RRTA, Congress sort of acknowledges that there's a lack of clarity about how those things are going to be treated under FICA, and it enacts a variety of very specific provisions that handle those things. So that's why we think the agency was reasonable in construing those statutes in tandem. But of course, the Court doesn't need to reach the question of whether all kinds of in-kind benefits are treated exactly the same under FICA and the RRTA. All this case presents is whether stock options, which are a form of remuneration that are readily convertible to cash, qualify as money remuneration. And, Mr. Governor? Roberts If we were to agree with you, we would have to assume that whoever wrote this statute was told, we want you to include money remuneration and stock remuneration. And he said, well, a good way to do that would be to say money remuneration. Right? You're asking us to accept that, aren't you? I don't think exactly. I mean, I think as my friend on the other side acknowledged, money has and had at the time of the statute's enactment a broader use as well as a narrower one, and the broader use, I think, encompasses stock. And I think some ways the Court can see that that broader use existed is looking not only to dictionary definitions, but also to the predecessor versions of the statute. I'm not saying there isn't a broader use and someone might understand it, but I think if you wanted to be even close to being clear, or reasonably clear, and you want to include both money and stock, you wouldn't pick the phrase money. You would either say money and stock, or you might say, as you suggest it is, something readily reducible, ascertainable value, readily reducible to cash. It's not clear that stock was, you know, necessarily at the forefront of the drafter's mind. I do think that the drafters used money in the phrase, any form of money remuneration in a broader sense, and you can see that through the text of the provisions that Congress put forward in sort of the various versions. So there were versions that included a carve-out for various in-kind benefits, and the enacted 1935 version of the statute also included a carve-out for one kind of in-kind benefits, for free transportation. So I think it's clear from those sort of versions of the language that Congress put forward that it understood money was being used in a broad sense. Kennedy, I thought you might have answered the Chief Justice by saying it means any form of money remuneration, but that still just gives you about a C-minus on the drafting. You know, obviously, if Congress had spoken directly to stock one way or the other, either said it's in or it's out, we wouldn't be here today, but I think the only reasonable interpretation of the word money, as it was used in the statute, particularly given the regulations and Congress's ratification of those regulations and all of the  Do you think that's the only reasonable? I didn't think your argument went that far. Well, I'd be happy to accept that it's the most reasonable reading of the statute. I thought in some places when you're talking about the regulations, your idea was it was a reasonable one. And we think that's the only reasonable one is a bit of a stretch. Fair enough. We think it's certainly the most reasonable reading of the statute in light of its language, in light of what happened since, and in light of Congress's objective in providing a self-sustaining employment system. Do you think the later adopted exemptions changed the meaning of money remuneration? How can they do that? So I think what this Court has said, I mean, it said it in Casey, it said it in Fausto, it's in the Scalia and Garner treatise, is that when this Court interprets statutes, if there's an ambiguous term in the early statute and then later provisions get enacted that shed light and make clear that Congress is acting on the understanding that it's the broader form of the term that was used, then you construe the statutes together. You adopt a reading that makes sense of both provisions rather than adopting a reading that would make the second enactment make no sense. So what is the answer to my question? Does it change the meaning or not? It resolves an ambiguity in the meaning of the prior provision. If you could just go back to some answers you gave to prior questions about how to get it right, that you're just saying that the how and exactly the method by which this is understood as taxable in this context is the same as in the income tax context. Is that right? That's right. These are going to be valued for purposes of the income tax. Nobody disputes that. And we think that once they're valued for purposes of the income tax, they're also that that value should be ascribed to them for purposes of the RRTA tax. If there are no further questions, I would ask that the Court affirm. Thank you, counsel. Four minutes, Mr. Dupree. Thank you. Just a few points. The first is this Court obviously needs to construe this tax provision in the context of the Code as a whole. We identify numerous provisions in the Code, both as it existed during the Great Depression, but also as it exists today, that makes clear that when Congress uses the word money in a tax statute, it does not mean stock. I think that if this Court were to reach the conclusion that in the context of the tax statute, the word money can encompass stock, I think that could have pretty significant spillover effects to the dozens, if not hundreds of places in the Code today that use the word money. How many of those other Code provisions use the words money remuneration as opposed to just money? They don't, Justice Sotomayor, but at the same time, I think money remuneration can simply be understood as remuneration in money, which of course begs the question as to, well, what's money? And our point is that when Congress puts the word money in a tax statute, it unambiguously excludes stock. There's no question about that in the current Code and the Code as it existed back in the Great Depression. The second point is to the extent the government argues that anything that can be valued and sold for cash falls within this capacious definition of money is wrong, because I can think of many things that can be sold faster for cash at a much lower transaction cost. For example, baseball tickets. If I have two tickets to the Nationals and Rockies game, I can sell those and change those into cash a lot faster than I could find a broker and sell my shares of stock on a market. The third point I would make, and I think it's apropos since tax day is almost upon us, is the government, the IRS, requires that we taxpayers pay our taxes in money. It will not let taxpayers pay their taxes in stock. Unless there are further questions, we ask the judgment below be reversed. Roberts. Thank you, Counsel. The case is submitted.